AMELIA GRIGALIUNOS, administratrix, *vs.* ARCHIE N. FROST,
public administrator.

Essex.   November 12, 1929. — February 26, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Executor and Administrator*, Accounts.   *Probate Court*, Appeal.

Upon an appeal from a decree of a probate court, entered after a hearing,
disallowing certain items of disbursements in schedule B of an ad-
ministrator's account, where the evidence is not reported, findings
of fact by the judge with regard to the propriety and reasonableness
of the charges are final.

It is proper for a judge of probate to disallow items in an account of an
administrator which represent sums which the administrator has not
yet paid out, even if an allowance of the items would have been proper
had the administrator paid out the amounts therein charged.

It is proper for a probate court, in a decree upon an account of an ad-
ministrator who has been succeeded by a public administrator, to
order the administrator to assign to the public administrator a bank
deposit which the court previously had determined had not been given
to the administrator as a personal gift, but was properly part of the
estate of the intestate.

PETITION, filed in the Probate Court for the county of
Essex on April 24, 1928, for the allowance of the alleged first
and final account of Amelia Grigaliunos, administratrix of
the estate of William Rudis, late of Lawrence.

It appeared that, on her petition alleging herself to be a
"sister" of the deceased, the petitioner was appointed ad-
ministratrix of his estate after she had been advised that
an instrument purporting to be his will was invalid because
improperly attested; that, it later being discovered that she
was not his sister nor an heir at law, petitions by the re-
spondent as public administrator, that the appointment of
the petitioner as administratrix be revoked and that he be
appointed to administer the estate, were allowed on July
19, 1928.

From findings made by the judge without a report of the
evidence, it appeared that item 1 of Schedule B of the ac-

count was in the amount of $362.30, and was "a bill of the husband of the accountant for bedding destroyed, medicine, doctor's bill, nursing, board and a charge for the use of the house for the funeral." The deceased had known the petitioner for many years and, when he fell sick, he went to her and her husband's home. "On that day the decedent gave to the petitioner deposit books for two bank accounts and asked her to see that he was buried 'nicely' if he died and that a monument was erected at his grave. After his death the accountant claimed that this transaction was a gift to her of said bank deposits causa mortis but after a hearing upon a petition filed by the public administrator of Rudis' estate it was decreed by this [the Probate] Court that it was not a valid gift." Two operations were performed upon the decedent at the petitioner's home; afterwards he was removed to a hospital where, after a third operation, he died. After his death, the petitioner "had the body brought to her house and she and her husband made all the arrangements for his funeral and burial. While the body was in the house many friends and acquaintances of the deceased came to the house and were furnished by the accountant and her husband with food and other entertainment." The judge found "that it was reasonable and proper that the petitioner's husband should be reimbursed for the expenses and trouble he incurred in supplying for the deceased the things enumerated in his bill and that $218.30 was a fair compensation therefor and allowed item for that sum."

Item 2 was "for a burial lot and funeral service and item was allowed."

"Item 3 was a fee of $5 paid by the petitioner to an attorney whom she first consulted about the will. The judge found that it was not a proper charge against the estate and disallowed it."

"Item 4 was for a payment of $200 to an attorney at the time the accountant withdrew deposits from the savings banks. The judge found that the attorney rendered no service to the petitioner as administratrix of the estate except the preparation of this account; that no account would have been necessary had not the petitioner, after she had been

told by the attorney who procured her appointment that she had no right to administer the estate, deliberately procured a certificate of her appointment for the purpose of getting possession of said bank deposits; and that the item was not a proper charge to be allowed against the estate."

Items 5–11 of the account were for bills of an undertaker, for a monument, for work at the grave, for a hospital bill, for services of the petitioner as administratrix and for alleged distributive shares. The judge found that none of such items had been paid by the petitioner and that they were "therefore disallowed."

In the decree upon the account, the petitioner was further ordered to assign and deliver to the respondent a deposit in a savings bank which contained what remained of the amounts which she had taken possession of after the death of the intestate and had placed in her name as administratrix.

The petitioner appealed.

The case was submitted on briefs.

*F. J. Bagocius*, for the petitioner.

*A. X. Dooley*, for the respondent.

WAIT, J. The appellant can take nothing by her appeal. Whether she was entitled to be allowed the items of her account as administratrix was matter for adjudication by the judge of the Probate Court which appointed her. So far as questions of fact are concerned, we are bound by the findings made by the judge, as no report of the evidence is made. *Jones* v. *Jones*, 223 Mass. 540. No error of law appears. As administratrix she was properly allowed so much of the amount paid for expenses attending the last illness of the deceased as the judge found to be reasonably and properly expended; but no more. The ultimate decision with regard to the propriety and reasonableness of the charges rested, not with her, but with him. The item for religious services at the funeral and for a lot for burial was properly allowed. The items five to eleven of the account had not been paid by her, and, for that reason, were disallowed properly, even if an allowance would have been appropriate had she actually paid out the amounts charged. An accountant has no right to in-

sist that money held for application to the discharge of obligations shall be allowed as money actually paid out. It is for payments, not for appropriations, that the accountant may rightfully demand allowance. *Browne* v. *Doolittle,* 151 Mass. 595.

The order that she turn over the bank book and money held by her on deposit was proper. Her right or lack of right to withhold them had been determined in another proceeding. It was not open on this appeal. The total of items one and two allowed, $363.30, is stated as $353.30 in the decree. The balance in cash held by the accountant should be modified accordingly to read $2,440.63. The decree should be modified to correct these apparent clerical errors, and when so modified is affirmed.

*Ordered accordingly.*